Moncure, P.,
delivered the opinion of the court.
If the district court had no jurisdiction to render "the decree of confiscation, relied on as a defence by the defendant in this case, then it is admitted by the counsel on both sides, and is clearly shown by authority, that the said decree is void, and must be so regarded, even in a collateral proceeding such as this is.
It is also admitted by the counsel on both sides, and is clearly shown by authority, that as the proceeding in this case is in rem, to give the court jurisdiction of the case, the res must have been brought by seizure within the power and control of the court.
Was it so brought?
“By the seizure of a thing,” said the supreme court in Pelham v. Rose, 9 Wall. U. S. B. 103,106, is meant the taking of a thing into possession, the manner of which, and whether actual or constructive, depending •upon the nature of the thing seized. As applied to subjects capable of manual delivery, the term means caption, the physical taking into custody.”
' “In the case at bar,” further said the court, “a visible thing, capable of physical possession, is the subject of the libel. It is the promissory note of Pelham which constitutes the res, against which the proceeding is instituted, and not a ‘credit’ or debt, which *26 the note is supposed by the defendant’s counsel to-represent. Whether by any proceedings, under the act of July 1862, the indebtedness of a maker on a negotiable promissory note, before its maturity, could be reached without the possession of the note itself, is not a question presented for our consideration. It is-sufficient that the object of the present libel is to reach the note, itself. This appears at every stage of the proceedings,” &c. “ To effect its seizure, as required by the act, it was therefore necessary for the marshal to take the note into his actual custody and control.” See also Pelham v. Way, 15 Id. 196.
That a credit was liable to “seizure,” within the-meaning of the act of July 17th, 1862, clearly appears, not only from the express language of the act itself, but also from various adjudications upon it by the supreme court of the United States.
Hirst, as to the express language of the act. The fifth section enacts: “That to insure the speedy termination of the present rebellion, it shall be the duty of' the president of the United States to cause the seizure of all the estate and property, money, stocks, credits and effects of the persons hereinafter named,” &c. And the sixth section makes it the duty of the president “Jto seize and use as aforesaid all the estate, property, moneys, stocks and credits of persons within any state or territory,” &c.
Secondly, as to the decisions of the supreme court. upon the subject: they are, Miller v. United States, 11 Wall. U. S. R. 268; Brown v. Kennedy, 15 Id. 591.
But as a credit is incapable of being actually seized, it must be constructively seized, if seized at.all.
How may it be constructively seized ?
The act of congress does not prescribe the mode, as. it might have done; and, if it had done so, no doubt *27 a seizure in that mode would have been sufficient, and perhaps the only seizure that would have been sufficient.
But the act of congress, as we have seen, makes it the duty of the president of the United States to seize, or cause the seizure of, all the estate, property, monies, stocks and credits, &c., as aforesaid; thus, as it seems, making it his especial duty to prescribe rules in regard to seizure where doubt or difficulty might arise on the subject. Accordingly, it is stated in 11 Wall., pp. 278 and 274, that “In order to carry out these acts of August 6th, 1861, and July 17th, 1862, the president charged the attorney general with the superintendence and direction of all proceedings under them, and authorized and required him to give to the district attorneys and marshals such instructions and directions as he might find needful and convenient touching all seizures, proceedings and condemnations under them.” Accordingly, on the 8th of January 1863, the attorney general issued general instructions on the subject to district attorneys and marshals. Among these instructions the following were given with regard to the seizure of property:
“All seizures will be made by the marshal of the proper district, under written authority to be given him by the district attorney, specifying with reasonable certainty the property to be seized, and the owner whose right is sought to be confiscated.
“When the marshal has seized any property under such authority, he will, without any unnecessary delay, make a true return thereof in writing to the district attorney.
“ Where the state law directs the method of seizure, it shall be conformed to as nearly as may be consistently with the objects of the acts of congress. If the *28 seized be personal property, it ought to be actually seized and safely kept; if real estate, the mar-ought to seize all the right, title, interest and eg£ate fjjg accuse(3 party, giving notice in writing of seizure to the tenants in possession, if any; if stocks, or other intangible property, the marshal ought (if there be no specific method prescribed by the state law) to describe the property as plainly as he can in his return, and leave the court to determine the sufficiency of the seizure.”
The subject of the proceeding in this case, viewing it most favorably for the defendant, was a “credit.” The method of seizure of such a subject, as directed by the state law, is that prescribed by the law in regard to attachments; and where the debtor is a corporation, as in this case, notice of the seizure ought to be given to the person, on whom by law process against the corporation is required to be served.
By the state law, Code of 1860, chapter 151, section 7, page 647, it is enacted that an attachment “shall be sufficiently levied in every case by a service of a copy of.such attachment on such persons as may be designated by the plaintiff in writing, or be known to the officer to be in possession of effects of, or to be indebted to, the defendant; and as to real estate, by such estate being mentioned and described by endorsement on such attachment.” See also sections 12 and 18 of the same chapter, Id. page 648. In regard to the execution of process on a corporation, it is enacted in section 7 of chapter 170, page 707 of the same Code, that “it shall be sufficient to serve any process against, or notice to, a corporation, or its mayor, rector, president, or other chief officer, or in his absence from the county ■or corporation in which he resides, or in which is the principal office of the corporation against or to which *29 the process or notice is, if it be a city or town, on the president of the council, or board of trustees, or in his absence on the recorder, or any aldermen or trus- , ,, tee.”
The method of seizure in this case ought therefore to have been that prescribed by the state law as aforesaid—that is, the marshal ought to have served a copy of the warrant of the district attorney on the mayor of the city of Alexandria, or in his absence on the president of the council of said city, or in his absence on the recorder or any alderman of said city. The marshal knew, or might easily have known, this method of seizure prescribed by the state law, and ought to have been informed of it if necessary by the district attorney.
Instead of pursuing that course, the marshal pursued the course named in his return, which is in these words: “I certify that I have seized the within described property, and given notice to R. Johnson, Esq., auditor of the corporation of Alexandria, as within directed.”
In other words, instead of serving a copy of the warrant on the mayor, or in his absence on the next chief officer of the city, who might have been present as aforesaid, he gave notice of it (whether orally or in writing is not stated), to “R. Johnson, Esq., auditor of the corporation of Alexandria.”
What are the duties of this auditor we know not. They may be important in regard to the debt of the corporation, and notice to him may in fact have been as apt to be communicated to the plaintiff as notice to the mayor. But it is enough to say that the law has made the mayor, &e., and not the auditor of the corporation, the agent thereof to receive such a notice, and service of notice upon him has no more effect in *30 corporation than service on any stranger would have had.
In Miller v. United States, 11 Wall. U. S. R. 268, the gejzure wa8 0f stocks in railroad' companies in MichiSan’ was mac^e giving notice of seizure to the president of one and vice president of the other of said companies, and was held to be a good seizure, having been recognized to be good by the court in which the proceeding was had and the judgment of confiscation pronounced. But the law of Michigan prescribed no mode of seizure of the stock of a corporation, and the court had prescribed none in that case. The court therefore held that the mode of seizure pursued in that case was reasonable and sufficient. But even in that case, the seizure was considered insufficient by the three dissenting judges.
The act of congress in question is extremely penal in its effect, and ought therefore to be strictly construed, aud a rigid compliance with all its requirements ought to be exacted. The means of defence which it afforded to those who were affected by it, were exceedingly limited, and the mode of giving notice to them was necessarily very imperfect. It is all important, therefore, that they should have the full benefit of any defect in the ex parte proceedings had against them under that act. The objection goes to the want of jurisdiction in the court to pronounce the judgment complained of, and if the objection be a good one, it makes the judgment null and void, even in a collateral proceeding. While presumptions are made in favor of the judgment of a court of competent jurisdiction, they are not made in favor of jurisdiction, when that is the question in controversy; and especially is that the case when the court, whose jurisdiction is in controversy, is one of limited *31 .jurisdiction, such as are the district and circuit courts of the United- States. It cannot be presumed, therefore, •in favor of the jurisdiction of the court in this case, that the marshal seized the property described in the warrant in the mode required by law, and especially -can it not be so presumed in the face of his return, which shows that the only mode of seizure was by giving notice to R. Johnson, auditor of the corporation of Alexandria, which, as we have seen, was not a legal mode of seizure.
Then the res in this case was not brought by seizure within the power and control of the court which rendered the decree of confiscation in this case, which decree is therefore null and void, and the judgment of the court below must on that ground be reversed and annulled.
But the decree of the district court is void for another reason; and that is, the plaintiff in error was deprived by a rule of the said court of his legal and constitutional right to appear and defend himself in said court against the charge on which the proceeding to confiscate his property as aforesaid was founded. According to the agreed statement of facts in the case, “between March 14th and April 11th, 1864, an attorney at law appeared before John O. Underwood, judge ■of the district court of the United States for the district of Virginia at Alexandria, as counsel, and endeavored to procure from him a reversal of the decree of confiscation entered in favor of the United States against Ur. Orlando Fairfax’s (the plaintiff in this cause) house and lot, situated on Cameron street in the city of Alexandria. The judge, the Hon. John C. Underwood, informed the attorney from the bench, that he could allow no appearance for any ‘rebel’ ■or ‘traitor;’ that this was the rule of his court as *32 before that publicly announced, and that he had, in every case, ordered the appearance of counsel for, and the answer of, ‘rebels’ to be stricken from the files. The records of three confiscation cases tried in the United States district court for the district of Virginia before the said John O. Underwood as judge, between March 10th, 1864, and May 4th, 1864, in which the United States was plaintiff, and Dr. Orlando Fairfax (the plaintiff in this cause) was defendant, show that in each case the above rule and practice of the court, as proven by said attorney, that is to allow no appearance for any ‘rebel’ or ‘traitor,’ was carried out against Dr. Orlando Fairfax, the defendant in those causes, and the plaintiff in this, and that the appearance of his attorney, and his answers in those three causes, tried and determined between March 10th, 1864, and May 4th, 1864, were, by order of the United States district court at Alexandria, stricken from the files, on the ground that said Dr. Orlando Fairfax was within the Confederate lines, and a rebel.”
The judgment for the confiscation of the stock or bonds held by Dr. Orlando Fairfax, and the money due to him thereon by the city of Alexandria, was rendered by the said district court on the 4th day of May 1864, after the trial of the other three confiscation cases against the same defendant referred to in the said agreed statement of facts, in which cases his other estate, or most of it, was confiscated, and was in form a judgment by default, in the following words : “ The papers in this cause having been heretofore returned, the’usual proclamation having been made, the default of all persons being duly entered, and due deliberation being had on the pleadings, it is thereupon, on motion of L. H. Chandler, attorney for the United States, ordered, adjudged, sentenced and decreed by *33 the court, that the personal property mentioned and described in the libel in this cause be, and the same accordingly is confiscated and condemned as forfeited to the "United States.” And then followed an award of a writ of venditioni exponas for a sale of the said property.
Whether the defendant, Fairfax, offered to appear and make his defence in said case, and was refused permission to do so, or refrained from doing so vain a thing by the rule of the court, which had just been enforced against him in three other confiscation cases, does not appear. Uo doubt he would have so "appeared and made his defence in the said case but for the said rule. If he had so appeared and made his defence, and afterwards, before the hearing of the case, the appearance and defence had been stricken from the files on the ground that he was a “ rebel” or a “ traitor,” there can be no doubt but that the judgment afterwards rendered in the case as by default would have been reversed by the supreme court of the United States. It was so expressly and unanimously decided by that court in McVeigh v. United States, 11 Wall. U. S. R. 259, in which Mr. Justice Swayne, delivering the opinion of the court, said: “In our judgment the district court committed a serious error in ordering the claim and answer of the respondent to be stricken from the files. As we are unanimous in this conclusion, our opinion will be confined to that subject. The order in effect denied the respondent a hearing. It is alleged that he was in the position of an alien enemy, and hence could have no locus standi in that forum. If assailed there he could defend there. The liability and the right are inseparable. A different result would be a blot upon our jurisprudence and civilization. We cannot hesitate or doubt on the subject. It would be *34 contrary to the first principles of the social compact ■ u ... . . and of the right administration of justice.” Accord-the judgment of the district court in that case wag reverse(j) an¿ the cause remanded to the circuit court with directions to proceed in it in conformity to law.
In Underwood v. McVeigh, 23 Gratt. 409, it was unanimously held by this court, that even in a collateral proceeding between other parties the judgment of the district court referred to in Mc Veigh v. United States, supra, having been rendered in the absence of McYeigh, was a nullity, and the deed of the marshal passed no title to the purchaser. Judge Christian, in delivering the opinion of the court, said: “The sentence of condemnation and sale was a nullity—void in toto. It was rendered absolutely void by the act of the court in refusing to permit McYeigh to appear and be heard. The authorities on this point are overwhelming, and the decisions of all the tribunals of every country, where an enlightened jurisprudence prevails, are all one way. It lies at the very foundation of justice, that every person who is to be affected by an adjudication should have an opportunity of being heard in defence, both in repelling the allegations of fact and upon the matters of law; and no sentence of any court is entitled to the least respect in any other court, or elsewhere, when it has been pronounced ex parte and without opportunity of defence.” “A tribunal which decides without hearing the defendant, or giving him an opportunity to be heard, cannot claim for its decrees the weight of a judicial sentence. See Smith’s Leading Cases, vol. 1, part 2, ed. 1872, pp. 1118, 1119 and 1120, and the numerous cases there cited.”
Such is the settled law where the defendant’s appearance and answer are stricken from the files, and the *35 •court then goes on to decide the case in the absence of ° • .the defendant, and without being willing to hear him. In that case the judgment is not only void, but may reversed on error by an appellate court.
But what difference can it make that the defendant’s appearance and answer were first received and then stricken from the files if he was not permitted to appear? It may' make this difference to be sure; that, in the latter ease, the refusal of the court to permit him to appear, not being matter of record in the case, he can obtain no relief by writ of error to an appellate court. But that difference strengthens the reason for giving him relief in a collateral proceeding, which is his only remedy. Surely he is entitled to some remedy for the grievous wrong which is done him by not permitting him to appear and defend himself against a criminal charge which is made against him. It is not his fault that he has no remedy by writ of error. He had no power to appear against the rule of the court to the contrary. He could not therefore make the refusal of the court a matter of record in the case. The judgment is therefore absolutely null and void, and must be so regarded in a collateral proceeding. The defendant is in effect not a party to the proceeding, and a judgment cannot be conclusive against a person not a party.
The defendant’s right to appear and defend himself against the criminal charge made against him in the libel is manifest from the nature of the act of congress, and all the proceédings against him in the confiscation case. The act was not made for the confiscation of property, merely because it was enemy’s property, but because the owner of it had been guilty of certain •criminal acts defined in the law. His guilt of these criminal acts is the foundation of the judgment of con- *36 ^8ca^on against him, and his right to defend himself against the charge of these acts is just as clear as , would be his right to defend himself against a charge mur(jer or any other ciime. Almost every step in the proceedings recognizes the right of the defendant to appear and make his defence. In the conclusion of the libel, prayer is made that process of monition may issue against the owner of the property therein described, and against all persons interested, or claiming an interest therein, warning them, at some early day to be therein named, to- appear and answer this libel of information; and the owner of said property being absent and non-resident, prayer is further made for order of publication in the usual form, &c. And to the same effect are the subsequent proceedings in the case. As for instance, the order of court awarding the monition, appointing a time and place for the trial-of the cause, and directing notice of such time and place, and of the substance of the libel to be given by publication thereof in a newspaper published in the-city of Alexandria, and also by posting up the same at the court-house door; and that proclamation of the pendency of the suit be made by the marshal at the court-house door twice weekly until the day of trial. All of these directions appear by the record to have been complied with.
What a mockery, in the face of all these proceedings designed to notify the defendant of the charges made against him and to afford him an opportunity of' appearing and making his defence, was the application to his case of the rule of the court to “ allow no appearance for any ‘rebel’ or ‘traitor!’” thus assuming-his guilt of the crime charged against him, which charge he was summoned to answer.
That he was prevented by this rule thus announced *37 from appearing and making his defence, is manifest. He had appeared and made his defence in several other •confiscation cases against him tried just before the trial of this one, and his appearance and defence in •those cases had been stricken from the file, under the operation of the rule which was then announced to his .attorney. He had precisely the same reason for appearing and making his defence in this case as in those cases; and he would, no doubt, certainly have done so, but for the rule which, barred the court against him. It was certainly not necessary for him to do so vain a thing as to knock at the door of the court after it was barred', and when he knew it would not be opened to him. It can hardly be necessary to cite authority in support of views which seem to be self-evident. The cases of Dean v. Nelson, 10 Wall. U. S. R. 158; Lasere v. Rochereau, 17 Id. 437; and Tacey v. Irwin, 18 Id. 549, strongly sustain them; but it is unnecessary to do more than refer to them.
Upon the whole, the court is of opinion that the judgment of the circuit court is erroneous, and ought to be reversed and annulled; that the law, upon the facts stated in the case agreed, is for the plaintiff, and that judgment ought to be rendered accordingly.
Since writing the foregoing opinion, we have received and read the opinion of the supreme court of the Hnited States in the case of Windsor v. McVeigh, recently decided in that court and not yet reported. We entirely concur in that opinion, and think the principles established by it fully sustain the views expressed by us, in the latter branch of the foregoing ■opinion. That decision entirely accords with the decision of this court in Underwood v. Mc Veigh, 23 Gratt. 409; the facts of the two cases being precisely alike. *38 We have endeavored to show in the foregoing opinion,, that there is at least as much- reason in this case as. there was in that, for considering the judgment of confiscation void, on the ground that it was “a sentence of a court pronounced against a party, without hearing him, or giving him an opportunity to be heard.” Such a sentence “is not a judicial determination of his rights, and is not entitled to respect in any other tribunal;” according to the opinion of the supreme court in the ease above cited. We deem it unnecessary .to say anything further than to express our gratification, that the principle which seems to us-to be so just, has thus received the emphatic sanction of that high tribunal. s
The ease was argued at the last term of the court,, and before the election of Judge Burks; but he concurs in the opinion.
Judgment reversed.